## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Nina Y. Wang

Civil Action No. 21-cv-00199-NYW-KLM

LINDSEY TRAXLER,

      Plaintiff,

v.

TYLER S. BROWN, in his official and individual capacities, and
THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF ARAPAHOE,
COLORADO,

      Defendants.

---

## MEMORANDUM OPINION AND ORDER

---

This matter is before the Court on Defendants' Motion for Summary Judgment (the "Motion" or "Motion for Summary Judgment") [Doc. 54]. Upon review of the Motion and the related briefing, the applicable case law, and the record before the Court, the Court concludes that oral argument will not materially assist in the resolution of this matter. For the reasons set forth below, the Motion for Summary Judgment is respectfully **GRANTED**.

## BACKGROUND

This case arises out of the employment Plaintiff Lindsey Traxler ("Plaintiff" or "Ms. Traxler") within the Arapahoe County Sheriff's Office (the "Sheriff's Office"). *See generally* [Doc. 30]. Ms. Traxler has been employed by the Sheriff's Office since March 2010. [*Id.* at ¶ 17]. In 2018, Ms. Traxler was charged with third-degree assault, false imprisonment, and child abuse. [*Id.* at ¶ 49]. She was placed on unpaid administrative leave during the pendency of the criminal charges and was reinstated to her employment in September 2019, after she received a deferred

judgment on the third-degree assault charge.  [*Id.* at ¶¶ 50, 60, 68].  Ms. Traxler requested backpay for her unpaid administrative leave upon her return, a request which her supervisor, Defendant Tyler S. Brown, the Arapahoe County Sheriff ("Sheriff Brown"), denied.  [*Id.* at ¶¶ 70–71].

Ms. Traxler initiated this lawsuit on January 21, 2021 against Sheriff Brown and the Board of County Commissioners of the County of Arapahoe (the "Board"), alleging discrimination on the basis of sex and gender.  *E.g.*, [*id.* at ¶ 4].  Specifically, Ms. Traxler alleges that male deputies in the Sheriff's Office who have been charged with criminal violations have been placed on paid administrative leave or have alternatively received backpay upon reinstatement of their employment.  [*Id.* at ¶¶ 72–83].  Ms. Traxler asserts four claims for relief:  (1) a discrimination claim under the Colorado Anti-Discrimination Act ("CADA") against Sheriff Brown in his official capacity and against the Board ("Claim One"); (2) a discriminatory treatment claim under Title VII against Sheriff Brown in his official capacity and against the Board ("Claim Two"); (3) a Fourteenth Amendment equal protection claim under 42 U.S.C. § 1983 against Sheriff Brown, both in his individual and official capacities ("Claim Three");[1] and (4) a discriminatory impact claim under Title VII against Sheriff Brown in his official capacity and against the Board ("Claim Four").  [*Id.* at 12–17].  On July 11, 2022, Defendants filed the instant Motion for Summary Judgment, seeking judgment in their favor on each of Plaintiff's claims.  *See generally* [Doc. 54].[2]

---

[1] The Court notes that, in her Second Amended Complaint, Ms. Traxler also names the Board in Claim Three.  *See* [Doc. 30 at 14].  However, in the Final Pretrial Order, which "control[s] the subsequent course of this action and the trial," *see* [Doc. 79 at 6], Plaintiff states only that this claim "is made against Sheriff Tyler Brown in his Individual and Official Capacity."  [*Id.* at 2].  Thus, any equal protection claim asserted against the Board appears to have been abandoned by Plaintiff.  *See Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002) ("[C]laims, issues, defenses, or theories of damages not included in the pretrial order are waived even if they appeared in the complaint."); *see also Enos-Martinez v. Bd. of Cnty. Comm'rs of Cnty. of Mesa*, No. 10-cv-00033-WJM-DLW, 2012 WL 1144660, at *7 (D. Colo. Apr. 5, 2012).

[2] This case was reassigned to the undersigned on August 8, 2022 upon her appointment as a United States District Judge.  *See* [Doc. 60].

The matter is fully briefed, [Doc. 64; Doc. 71], and the Court analyzes the Parties' arguments below.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way. A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (internal citations and quotation omitted).

"[I]t is not the party opposing summary judgment that has the burden of justifying its claim; the movant must establish the lack of merit." *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1110 (10th Cir. 2009). In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant must only point the Court to a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Once the movant has met its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). To satisfy this burden, the nonmovant must point to competent summary judgment evidence creating a genuine dispute of material fact; conclusory statements based on speculation, conjecture, or subjective belief are insufficient. *See Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004); *see also* 10B Charles Alan Wright et al., Federal Practice and Procedure § 2738 (4th ed. 2022) (explaining that the nonmovant cannot rely on "mere reargument of his case or a denial of an opponent's allegation"

to defeat summary judgment).  In considering the evidence, the Court cannot and does not weigh the evidence or determine the credibility of witnesses.  *See Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008).  At all times, the Court will "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant."  *Adler*, 144 F.3d at 670.

## UNDISPUTED MATERIAL FACTS

The below material facts are drawn from the Parties' briefing and the record before the Court and are undisputed unless otherwise noted.[3]

1. Beginning March 2010 and at all times relevant to this lawsuit, Ms. Traxler was employed by the Sheriff's Office as a non-certified deputy.  [Doc. 54 at ¶ 2; Doc. 64 at 3; Doc. 54-1 at 7:22–8:2].[4]

2. On February 17, 2018, Ms. Traxler was arrested and charged with misdemeanor child abuse, domestic violence, harassment, assault, and false imprisonment.  [Doc. 54 at ¶ 1; Doc. 64 at 3; Doc. 54-1 at 22:21–24; Doc. 54-2 at 92].

3. According to the arrest report, the criminal charges stemmed from a domestic dispute between Ms. Traxler and her then-boyfriend, Deputy Brett Cohn, who is also a Sheriff's Office employee.  [Doc. 54 at ¶ 3; Doc. 64 at 3; Doc. 54-2 at 93].[5]

---

[3] Both sides have submitted voluminous evidentiary materials that appear to contain a large amount of content that is not relevant to their briefing.  *See, e.g.*, [Doc. 54-1; Doc. 64-6].  Counsel for all Parties are **DIRECTED** to review Local Rule 56.1, which provides: "Voluminous exhibits are discouraged.  Parties <u>shall</u> limit exhibits to <u>essential</u> portions of documents."  D.C.COLO.LCivR 56.1(c) (emphasis added).

[4] When citing to transcripts, the Court cites to the document number generated by the CM/ECF system but the page and line numbers appearing on the transcript.  In all other instances, the Court cites to the page numbers generated by the CM/ECF system, as opposed to the page numbers designated by the Parties.

[5] Both Parties refer to Brett Cohn as a Deputy, *see, e.g.*, [Doc. 54 at 14; Doc. 64 at 15], but also as a Sergeant.  *See, e.g.*, [Doc. 54 at ¶ 4; Doc. 64 at 16].  The Court refers to this individual as Deputy Cohn in accordance with the Parties' most frequently used title.

4.      Ms. Traxler was placed on unpaid administrative leave on February 18, 2018 due to the criminal charges.  [Doc. 54 at ¶ 6; Doc. 64 at ¶ 6; Doc. 54-2 at 145; Doc. 54-7 at ¶ 4].[6]

5.      The Arapahoe County Sheriff's Office maintains a practice of placing employees who have been charged with felonies and non-traffic-related misdemeanors on unpaid administrative leave during the pendency of the criminal charges.  [Doc. 54 at ¶ 5; Doc. 64 at ¶ 5; Doc. 54-3 at ¶ 9; Doc. 54-4 at ¶ 6].[7]

6.      In addition, it is the Sheriff's Office practice to have Internal Affairs ("IA") investigate potential violations of Sheriff's Office policies when a Sheriff's Office employee is charged with criminal conduct.  [Doc. 54 at ¶ 4; Doc. 64 at 3; Doc. 54-4 at ¶ 4].

7.      On or about February 20, 2018, Deputy Inspector Wayne Pennington initiated an investigation with respect to Ms. Traxler.  [Doc. 54 at ¶ 7; Doc. 64 at 3; Doc. 54-2 at 2; Doc. 54-7 at ¶ 4].

---

[6] Ms. Traxler attempts to dispute this assertion by stating that "[t]here is a material, factual dispute as to the reason Plaintiff was placed on unpaid suspension."  [Doc. 64 at ¶ 6].  Ms. Traxler does not identify or explain this purported dispute or cite any evidence demonstrating the existence of a dispute of fact.  *See* [*id.*].  "A party asserting that a fact cannot be or is genuinely disputed <u>must</u> support the assertion by . . . citing to particular parts of materials in the record, . . . or . . . showing that the materials cited do not establish the absence or presence of a genuine dispute."  Fed. R. Civ. P. 56(c)(1) (emphasis added).  "If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."  Fed. R. Civ. P. 56(e)(2).  Accordingly, the Court deems this fact undisputed.  *See Lopez v. United States*, 21 F. App'x 879, 882 (10th Cir. 2001) ("[V]ague references to the existence of disputed facts, without identifying the factual matters in dispute[,] are insufficient.").

[7] In response to Defendants' assertion, Ms. Traxler states that "[t]he Sheriff may maintain a practice of placing certain employees on administrative leave, but there is [a] material, factual dispute as to whether, when, and how he applies it."  [Doc. 64 at ¶ 5].  Again, Ms. Traxler does not explain the nature of this purported dispute or cite to any record evidence demonstrating the existence of a dispute; for this reason, the Court deems this fact undisputed.  *See supra* n.6.

8.     In accordance with typical Sheriff's Office practice, Sergeant Pennington's IA investigation was postponed pending a resolution of the criminal case.  [Doc. 54 at ¶ 8; Doc. 64 at 3; Doc. 54-3 at ¶ 11; Doc. 54-7 at ¶ 4].

9.     Ms. Traxler pleaded guilty to the third-degree assault charge, pursuant to a plea agreement, on September 5, 2018.  [Doc. 54 at ¶ 9; Doc. 64 at ¶ 9; Doc. 54-2 at 112, 7:7–11[8]; Doc. 56 at 33:5–11].[9]

10.     Pursuant to the plea agreement, Ms. Traxler was given a deferred judgment with a 15-month probationary period and was required to comply with certain conditions; among other requirements, she was forbidden to possess or control a firearm or other weapon and was required to have no contact with Deputy Cohn.  [Doc. 54 at ¶ 10; Doc. 64 at 3; Doc. 54-1 at 152:6–10; Doc. 54-2 at 118, 13:9–24; Doc. 54-2 at 130].

11.     Upon successful completion of the probationary period, the assault charge would be dismissed and no conviction would appear on Ms. Traxler's record.  [Doc. 54 at ¶ 10; Doc. 64 at 3; Doc. 54-1 at 151:24–152:10].

12.     The Sheriff's Office resumed its IA investigation on September 7, 2018 by serving Ms. Traxler with a Notice of Complaint, which outlined potential violations of Sheriff's Office policies.  [Doc. 54 at ¶ 11; Doc. 64 at 3; Doc. 54-2 at 6].

---

[8] Because Defendants' Exhibit B contains both deposition and non-deposition pages, when citing to the transcript of Ms. Traxler's plea hearing contained in Exhibit B, the Court cites to both the page number generated by the CM/ECF system and the page and line numbers designated on the transcript.

[9] Plaintiff responds that "Defendant[s] assert[] that Plaintiff pleaded 'guilty' but this fact is incomplete as it fails to note that all other charges against Plaintiff were dismissed, and the assault charge was later dismissed."  [Doc. 64 at ¶ 9].  Plaintiff does not dispute the accuracy of Defendants' statement, however, and the Court deems this fact undisputed. *See supra* n.6.

13.     Per Sheriff's Office policy, an IA investigation entails only fact gathering through witness interviews, documentary evidence, and other fact collection.  The facts are then forwarded to an assigned supervisor to review the facts and reach a conclusion after a meeting with the accused employee.  [Doc. 54 at ¶ 13; Doc. 64 at 3; Doc. 54-3 at ¶¶ 13–14].

14.     The investigation took approximately four weeks and was completed on or around October 5, 2018.  [Doc. 54 at ¶ 12; Doc. 64 at 3; Doc. 54-7 at ¶¶ 7–9; Doc. 54-2 at 12].

15.     Then, on December 28, 2018, Ms. Traxler met with the assigned supervisor for her case, Lieutenant Jeremy Nesvold.  [Doc. 54 at ¶ 14; Doc. 64 at 3; Doc. 54-9 at ¶ 10].

16.     On December 29, 2018, Lieutenant Nesvold sustained four policy violations against Ms. Traxler and recommended that she be terminated from her employment.  [Doc. 54 at ¶ 15; Doc. 64 at 3; Doc. 54-2 at 61–67; Doc. 54-9 at ¶ 12].

17.     Ms. Traxler appealed the recommendation to a disciplinary hearing panel.  [Doc. 54 at ¶ 16; Doc. 64 at 3; Doc. 54-2 at 59].

18.     After a hearing, the disciplinary panel sustained Lieutenant Nesvold's recommendation on three of the four policy-violation recommendations and agreed with his recommendation that Ms. Traxler be terminated.  [Doc. 54 at ¶¶ 17–18; Doc. 64 at 3; Doc. 54-2 at 42, 57; Doc. 54-3 at ¶ 17].

19.     Ms. Traxler appealed the disciplinary panel's decision to Sheriff Brown.  [Doc. 54 at ¶ 19; Doc. 64 at 3; Doc. 54-1 at 85:4–6; Doc. 54-3 at ¶ 18].

20.     Sheriff Brown met with Ms. Traxler on March 10, 2019.  After this meeting, Sheriff Brown permitted Ms. Traxler time to attempt to modify her protective order to address the weapons restrictions and the no-contact provision before deciding whether to sustain or reverse the panel.  [Doc. 54 at ¶ 21; Doc. 64 at 3; Doc. 54-4 at ¶¶ 9–14].

21.     On August 15, 2019, Ms. Traxler informed Sheriff Brown that she had successfully had the protective order modified.  [Doc. 54 at ¶ 22; Doc. 64 at 3; Doc. 54-4 at ¶ 17].

22.     Ms. Traxler returned to work on September 12, 2019.  [Doc. 54 at ¶ 22; Doc. 64 at 3; Doc. 54-1 at 177:15–23; Doc. 54-4 at ¶ 17].

23.     After Ms. Traxler returned to work, Sheriff Brown issued a decision in her IA case wherein he sustained the finding that Ms. Traxler had violated three Sheriff's Office policies but declined to terminate her employment or impose any additional discipline.  [Doc. 54 at ¶ 23; Doc. 64 at 3; Doc. 54-2 at 36; Doc. 54-4 at ¶¶ 18–19].

24.     At all times during the IA process, Ms. Traxler remained on unpaid administrative leave.  [Doc. 54 at ¶ 20; Doc. 64 at 3; Doc. 54-3 at ¶ 21].

25.     Sheriff Brown informed Ms. Traxler that she would not receive backpay for her period of unpaid leave.  [Doc. 54 at ¶ 23; Doc. 64 at 3; Doc. 54-4 at ¶ 20].

26.     The Sheriff's Office has never provided backpay to an employee who was placed on unpaid leave due to the filing of criminal charges and where the employee's IA charges were sustained.  [Doc. 54 at ¶ 24; Doc. 64 at 3; Doc. 54-3 at ¶ 21; Doc. 54-4 at ¶ 21].

27.     On December 27, 2019, Ms. Traxler filed a charge of discrimination with the Colorado Civil Rights Division ("CCRD") and the Equal Employment Opportunity Commission ("EEOC").  The entities issued right-to-sue letters on October 26, 2020 and November 19, 2020, respectively.  [Doc. 54 at ¶¶ 25–26; Doc. 64 at 3; Doc. 54-1 at 13:21–14:4; Doc. 54-12; Doc. 54-13; Doc. 54-14].

28.     Ms. Traxler initiated this lawsuit on January 21, 2021 and filed a Second Amended Complaint and Jury Demand, with leave of Court, on August 9, 2021.  [Doc. 1; Doc. 30].

## ANALYSIS

Defendants move for judgment in their favor on each of Ms. Traxler's claims.  First, they contend that they are entitled to judgment on Plaintiff's disparate treatment claims raised under CADA and Title VII because Plaintiff cannot establish a prima facie disparate treatment case. [Doc. 54 at 9].  In the alternative, they maintain that they are entitled to judgment on these claims because Ms. Traxler cannot rebut evidence that there was a legitimate, non-discriminatory reason for the Sheriff's decision to deny backpay.  [*Id.* at 16].  Then, they contend that they are entitled to judgment on Plaintiff's Title VII disparate impact claim because Ms. Traxler can provide no evidence in support of that claim.  [*Id.* at 17].  With respect to Plaintiff's equal protection claim, Defendants assert that this claim must fail because Ms. Traxler cannot demonstrate that she was discriminated against on the basis of sex, [*id.* at 19], and insofar as the claim is asserted against Sheriff Brown in his individual capacity, he is entitled to qualified immunity.  [*Id.* at 20].  And finally, Defendants contend that Plaintiff's claims against the Board must fail because she has presented no evidence that the Board had any control over the terms of her employment.  [*Id.* at 22].  The Court addresses these arguments in turn below.

## I.       Plaintiff's Disparate Treatment Claims

Ms. Traxler's first two claims raise allegations of discriminatory disparate treatment under CADA and Title VII, respectively, [Doc. 30 at 12–13], which are analyzed under the same framework. *See Johnson v. Weld Cnty.*, 594 F.3d 1202, 1219 n.11 (10th Cir. 2010).  "To overcome summary judgment on a claim of disparate treatment, the plaintiff must provide evidence that (1) the victim belongs to a class protected by Title VII" (or CADA), "(2) the victim suffered an adverse employment action, and (3) the challenged action took place under circumstances giving rise to an inference of discrimination." *Throupe v. Univ. of Denver*, 988 F.3d 1243, 1252 (10th

Cir. 2021).   Where, as here, a plaintiff relies on circumstantial evidence to support her discrimination claims,[10] the Tenth Circuit applies the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Ibrahim v. All. for Sustainable Energy, LLC*, 994 F.3d 1193, 1196 (10th Cir. 2021).  First, Ms. Traxler must present a prima facie case of discrimination.  *Id.*  If she makes this showing, the burden then shifts to Defendants "to provide a legitimate, nondiscriminatory reason for" the adverse employment action.  *Id.*  And if Defendants successfully meet this burden, the burden shifts back to Ms. Traxler to demonstrate that Defendants' proffered reasons for the adverse action are pretextual.  *Id.*

Defendants challenge Ms. Traxler's ability to establish a prima facie discrimination case on the third element.  Specifically, they do not contest that Ms. Traxler is a member of a protected class or that a denial of backpay constitutes an adverse employment action; instead, they argue that she cannot demonstrate that Sheriff Brown's decision to deny Ms. Traxler backpay "was made under circumstances which give rise to an inference of discrimination."  [Doc. 54 at 9].  They contend that Ms. Traxler's theory of relief—that she was treated differently than similarly situated male counterparts—fails because the purported comparators are either not similarly situated to her or were treated similarly to Ms. Traxler.  [*Id.*].  And second, they contend that even if Plaintiff could establish her prima facie discrimination case, Defendants have established a legitimate, non-discriminatory reason for Sheriff Brown's decision, which Plaintiff cannot rebut—in other words, Plaintiff cannot establish that the decision was pretextual.  [*Id.* at 16].  Ms. Traxler responds that

---

[10] Defendants argue that Plaintiff "has not alleged any direct evidence of discrimination," [Doc. 54 at 5 n.2], an argument to which Plaintiff does not respond.  *See generally* [Doc. 64].  The Court notes that Ms. Traxler too relies on the *McDonnell Douglas* burden-shifting standard in her Response, [*id.* at 4–5], and does not otherwise argue that she has presented direct evidence of discrimination.  Accordingly, the Court follows the Parties' lead and proceeds as if Plaintiff relies solely on circumstantial evidence of discrimination in this case.

she has put forth sufficient evidence to give rise to an inference of discrimination because she has presented evidence that similarly situated male employees were treated more favorably than she was.  [Doc. 64 at 5–10, 15–19].

 "An inference of discrimination can arise from an employer's favoritism toward a similarly situated employee who is not part of the protected class."  *Ibrahim*, 994 F.3d at 1196.  Employees are similarly situated "when they deal with the same supervisor, are subjected to the same standards governing performance evaluation and discipline, and have engaged in conduct of 'comparable seriousness.'"  *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 801 (10th Cir. 2007) (quoting *McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006)).  In assessing whether two employees are similarly situated, a "court should also compare the relevant employment circumstances, such as work history and [workplace] policies, applicable to the plaintiff and the intended comparable employees."  *McGowan*, 472 F.3d at 745.  Further, the purported violations of workplace rules need not be identical, but must be "of comparable seriousness," *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1232 (10th Cir. 2000), and the plaintiff "must show that the incidents [s]he is using for comparison do not involve differentiating or mitigating circumstances that would distinguish them from [her] own conduct."  *Ramirez v. GEO Grp., Inc.*, 655 F. Supp. 2d 1170, 1176 (D. Colo. 2009) (quotation omitted).

 "[W]hether two employees are similarly situated ordinarily presents a question of fact for the jury."  *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1117 (10th Cir. 2007).  "But as with all issues of fact, 'at summary judgment, the court must determine whether plaintiff has adduced enough evidence to support a finding that the other employee and plaintiff were sufficiently similarly situated to support an inference of discrimination.'"  *Ramirez*, 655 F. Supp. 2d at 1176 (quoting *Riggs*, 497 F.3d at 1117).

Ms. Traxler identifies eight individuals who she believes are similarly situated to her and were treated more favorably than she was:  Sheriff Brown, Deputy Cohn, Deputy William Morris, Deputy Paul Mayfield, Deputy Genor Carter, Deputy Collin Roll, Deputy Dale Davis, and Deputy Raimundo Astorga.  *See* [Doc. 64 at 15–19].[11]  As a preliminary matter, the Court notes that Ms. Traxler points the Court to no evidence of her or any of these purported comparators' disciplinary history, tenure with the Sheriff's Office, or other employment information which would assist the Court in determining whether these employees are similarly situated.  *See* [Doc. 64]; *see also McGowan*, 472 F.3d at 745.  Nor does Plaintiff argue or cite record evidence demonstrating that Sheriff Brown, who denied Plaintiff backpay, was involved in any of the disciplinary decisions mentioned by Plaintiff.  *See Mann v. XPO Logistics Freight, Inc.*, 819 F. App'x 585, 600 (10th Cir. 2020) (employees are not similarly situated if decisionmakers are different).  With this in mind, the Court turns to the Parties' arguments.

### A.      No Criminal Charges

First, Defendants argue that a number of purported comparators are not similarly situated to Plaintiff because unlike Plaintiff, they were not charged with any crimes.  Specifically, Defendants highlight that, with respect to Sheriff Brown[12] and Deputies Cohn and Carter,  there is

---

[11] Defendants also identify other individuals—John Beck, Joseph Benson, Brian Brink, Kevin Syracuse, and Jeffrey Vincent—as Plaintiff's comparators.  *See* [Doc. 54 at 10].  However, Ms. Traxler clarifies in her Response that these individuals are not comparators and are not similarly situated to Ms. Traxler, such that she does not intend to rely on the treatment of these individuals to establish an inference of discrimination.  [Doc. 64 at 10–11].  Accordingly, the Court does not discuss the Parties' arguments with respect to these individuals.

[12] Although Ms. Traxler does not include Sheriff Brown in her list of comparators, *see* [Doc. 64 at 15], she states that Sheriff Brown was "alleged to have engaged in conduct which rises to the level of criminal conduct" but "was not placed on, nor voluntarily agreed to be placed on, unpaid suspension pending the outcome of the investigation which was criminal in nature."  [*Id.* at 15–16].  In an abundance of caution, the Court proceeds as if Ms. Traxler is asserting an argument that Sheriff Brown is an appropriate male comparator.

no evidence that any of these individuals were ever charged criminally.  [Doc. 54 at 14].  And although not mentioned by Defendants in this argument, the Court notes that Plaintiff also argues that Deputy Roll "was the subject of not one but two separate internal affairs [investigations]," one of which "involv[ed] inappropriate sex-based comments (which was sustained)," [Doc. 64 at 18], and neither Party suggests that there were any associated criminal charges; for this reason, the Court includes Deputy Roll's inappropriate workplace comments in this discussion, too.

In support of their argument, Defendants cite the declaration of Richard Anselmi, a Lieutenant in the Sheriff's Office who led the IA division for over four years.  [Doc. 54-3 at ¶ 2].  Lieutenant Anselmi avers that he "was asked to produce and to review any IA files involving these individuals" and based on his review, he found no IA cases for Deputy Cohn or Carter "in which either man had any criminal charges filed against him."  [*Id.* at ¶¶ 33–34].  In addition, Sheriff Brown "has no IA history at all."  [*Id.* at ¶ 34].  Ms. Traxler responds that whether these other employees were criminally charged is irrelevant, and instead, the Court must focus on "whether the alleged *conduct* of the individuals is similarly serious in its nature as compared to Plaintiff's alleged conduct."  [Doc. 64 at 14 (emphasis in original)].

Ms. Traxler argues that these individuals "were alleged to have engaged in conduct which rises to the level of criminal conduct, but were not prosecuted."  [*Id.* at 16].  First, Ms. Traxler states that Sheriff Brown "was involved in a physical altercation at a bar," but she cites to no record evidence in support of this assertion and provides no additional information describing the nature or circumstances of this physical altercation.  *See* [*id.*]; *see also* [Doc. 54-4 at ¶ 24 (Sheriff Brown stating that he "was involved in a physical confrontation with a man who had been harassing [his] wife while [they] were attempting to enjoy a night out" but "not discuss[ing] the specifics of that

physical confrontation")].[13]  With respect to Deputy Cohn, Ms. Traxler states that Deputy Cohn was accused of keeping a crime scene photograph on his personal phone[14] and was also alleged to have committed domestic violence against Plaintiff.  [Doc. 64 at 16, 17].  And finally, Deputy Carter "was alleged to have engaged in physical sexual harassment, touching female nurses" and Deputy Roll was "the subject of" an IA investigation "involving inappropriate sex-based comments."  [*Id.* at 18].

The Court agrees with Plaintiff generally that "[w]hen comparing the relative treatment of similarly situated . . . employees, the comparison need not be based on identical violations of identical work rules; however, the violations must be of comparable seriousness." *English v. Colo. Dep't of Corr.*, 248 F.3d 1002, 1011 (10th Cir. 2001).  However, the lack of information (and lack of argument) from Plaintiff about what *specific* conduct these purported comparators were alleged to have been involved in significantly hinders the Court's ability to analyze whether these comparators engaged in conduct that was comparably serious to Plaintiff's conduct.  Furthermore,

---

[13] It is not this Court's duty to search this voluminous case record for evidence detailing Sheriff Brown's conduct to determine whether it is of a similar serious nature compared to Plaintiff's conduct.  *See Doe v. Univ. of Denver*, 952 F.3d 1182, 1191 (10th Cir. 2020) (if a party fails to cite "particular parts of the record that support a particular argument, the district court is under no obligation to parse through the record to find the uncited materials") (alteration marks and quotations omitted).  In addition, insofar as Plaintiff cites an online video and a newspaper article that were not provided to the Court—in footnotes, *see* [Doc. 64 at 16 n. 13, 14]—in her Response brief, the Court declines to review evidence that is not in the record.

[14] Plaintiff asserts that Deputy Cohn "was alleged to have, on his personal [G]oogle account, photographs of a nude[] female crime scene victim."  [Doc. 64 at 16].  However, the evidence she relies on—two pages of Lieutenant Anselmi's deposition transcript—does not support the entirety of this statement.  In his deposition, Lieutenant Anselmi confirmed that Plaintiff had made a complaint that "Mr. Cohn had kept crime scene photos on his personal phone" and that IA "conducted the investigation and the allegations were determined to be not sustained" because they "couldn't prove that it was a policy violation."  [Doc. 64-9 at 30:14–31:12].  Lieutenant Anselmi confirmed that they found "a photo."  [Doc. 64-9 at 30:14–31:12].  However, nothing in the cited deposition testimony supports Plaintiff's assertion that the photograph in question was a nude photograph of a nude crime victim.  *See generally* [*id.*].

courts nevertheless often conclude that employees are not similarly situated where the alleged violations of workplace rules are factually dissimilar. *See, e.g.*, *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995) ("Because the incidents offered by [the plaintiff] to show disparate treatment are factually dissimilar to [the plaintiff's] conduct and the consequences thereof, the evidence is insufficient to support the inference that the police department's reason for discharging [the plaintiff] was improper."); *Salguero v. City Of Clovis*, 366 F.3d 1168, 1177 (10th Cir. 2004) ("Because the facts indicate significant differences in conduct among the officers under investigation, Salguero's allegations of disparate discipline do not suffice to show pretext."); *Monroe v. City of Lawrence*, 124 F. Supp. 3d 1097, 1121 (D. Kan. 2015) ("The [comparators'] overall misconduct is too dissimilar to similarly situate them with [the plaintiff]."). So, while the alleged conduct across the comparators need not be *identical*, a lack of factual similarly across the workplace violations makes it less likely that a jury could conclude that the violations were comparably serious. *See Officer v. Sedgwick Cnty.*, 226 F. App'x 783, 795 (10th Cir. 2007) ("Because Ms. Officer and Mr. Kalocinski's . . . conduct are significantly distinguishable, under our precedent the County 'must be allowed to exercise its judgment in determining how severely it will discipline an employee for *different types of conduct*.'" (quoting *Kendrick*, 220 F.3d at 1233) (emphasis added)).

Moreover, by contending that the existence or lack of criminal charges is immaterial to the determination of whether she is similarly situated to these comparators, Ms. Traxler "misplaces the focus of her argument on her own evaluation of the seriousness of other employees' conduct." *Robinson v. St. John Med. Ctr., Inc.*, 645 F. App'x 644, 651 (10th Cir. 2016). The relevant question is whether *the employer* "consider[s] the other employees' offenses to be comparable to [the plaintiff's] conduct." *Id.* The Court's role is to "prevent unlawful [employment] practices, not to

act as a super personnel department that second guesses employers' . . . judgments." *Kendrick*, 220 F.3d at 1233; *see also Garcia v. Cargill, Inc.*, No. 08-4153-SAC, 2010 WL 4160118, at *7 (D. Kan. Apr. 21, 2010) (granting summary judgment for the defendant where the plaintiff had not pointed to any evidence demonstrating "the defendant's disciplinary policy [or] any general classification or ranking of the seriousness of safety violations, [or] any other evidence to reflect how the defendant usually evaluated the seriousness of various safety violations.").

It is undisputed that the Sheriff's Office has a practice of placing employees charged with felonies or non-traffic misdemeanor offenses on unpaid leave, which suggests that the Sheriff's Office considers criminal charges of this nature to be serious enough to require that the employee in question no longer be present in the workplace.  [Doc. 54-4 at ¶ 4]; Undisputed Material Fact No. 5.[15]  Sheriff Brown explains in his declaration that "[t]he reason for this practice is that once charges have been filed, a probable cause review has been completed by an agency outside the IA

---

[15] Although Ms. Traxler cursorily asserts that "Defendants did not have a policy, and certainly not one known to Plaintiff or published for its employees anywhere, that allegations of criminal misdemeanors or felonies would be treated a certain way," [Doc. 47 at 8–9], this assertion is unsupported by any citations to the record and is insufficient to create a genuine dispute of fact as to the existence of such a practice.  *See Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1136 (10th Cir. 2003) ("Conclusory allegations that are unsubstantiated do not create an issue of fact and are insufficient to oppose summary judgment.").  Similarly, insofar as Ms. Traxler suggests that this practice did not exist "until this case was filed," *see* [Doc. 64 at 9], the Court notes that Lieutenant Anselmi states in his declaration that

> *Over the years*, the various sheriffs, including Sheriff Brown, have taken the position that employees who have been, or imminently will be charged with certain types of criminal charges, should be suspended without pay during the period of time that their criminal charges are being pursued, and during any subsequent IA investigation.  Other major policy violations typically are not included in this suspension without pay practice.

[Doc. 54-3 at ¶ 8 (emphasis added)].  Ms. Traxler's subjective belief that this practice did not exist at the time she was charged or suspended—without more when she has been afforded sufficient discovery to determine the policy and practice of the Sheriff's Office—is insufficient to create a genuine dispute of fact.

division" and "the Sheriff cannot justify keeping that employee in a position of public trust unless and until his/her name has been cleared, or the charges have been resolved one way or another." [Doc. 54-4 at ¶ 9]. Ms. Traxler directs the Court to no evidence that the Sheriff's Office has this same practice of automatically suspending employees without pay for engaging in conduct that does not result in criminal charges. *See generally* [Doc. 64]. And because these comparators were not placed on unpaid leave, there was presumably no opportunity for them to be denied backpay, as Plaintiff was.

To meet her burden at summary judgment, Ms. Traxler "must show that the incidents [s]he is using for comparison do not involve differentiating or mitigating circumstances that would distinguish them from [her] own conduct." *Ramirez*, 655 F. Supp. 2d at 1176. Ms. Traxler has not met this burden, and accordingly, she has not presented sufficient evidence from which a jury could conclude that she is similarly situated to Sheriff Brown[16] or Deputies Cohn, Carter, and Roll based on conduct that did not give rise to criminal charges. *Id.* And to the extent that Ms. Traxler suggests that her sex had a role in criminal charges being brought against her while male employees were permitted to engage in inappropriate incidents of similar seriousness and/or nature without criminal charges, [Doc. 64 at 15–16], this Court notes that there are no allegations or evidence in this action that these Defendants had the authority to make such charging decisions. *See generally* [Doc. 30]; *see also* [Doc. 64 at 16 (arguing that Greenwood Village originally recommended criminal charges against Sheriff Brown but the Denver District Attorney declined to bring such charges based on the parties' intoxication)].

---

[16] Furthermore, the Court notes that Sheriff Brown is and was at the time of the incident the elected Sheriff of Arapahoe County. [Doc. 54-4 at ¶¶ 2, 24]. Ms. Traxler is a deputy in the Arapahoe County Detentions Center. [*Id.* at ¶ 3]. "Employees who hold different positions with different job duties are not" similarly situated. *See Berhanu v. Arapahoe Cmty. Coll.*, No. 09-cv-02822-CMA-BNB, 2011 WL 782698, at *8 (D. Colo. Feb. 28, 2011).

**B.**     **"Traffic-Related" Charges**

Next, Defendants argue that Deputy Davis and Deputy Roll are not similarly situated to Ms. Traxler because they "were both charged only with traffic-related misdemeanors." [Doc. 54 at 15]. Ms. Traxler states that Deputy Davis "was found at-fault in a crash which injured himself and a Colorado State Trooper" but that he "received no known discipline." [Doc. 64 at 18]. This assertion is unaccompanied by any citation to record evidence or any supporting argument. *See* [*id.*]. The evidence cited in Defendants' Motion, however, indicates that Deputy Davis was charged with "careless driving resulting in bodily injury, a class 1 misdemeanor traffic offense." [Doc. 54-3 at ¶ 36]. With respect to Deputy Roll, Ms. Traxler asserts that he "was the subject of" and IA investigation "involving a DUI (which was sustained)" but that "his discipline was merely a letter of reprimand." [Doc. 64 at 18].[17] And finally, Ms. Traxler also argues that Deputy Raimundo Astorga, who was also charged with driving under the influence, *see* [Doc. 64-15 at 6], is an individual "whose favorable treatment compared to Plaintiff suggests an inference of discrimination." [Doc. 64 at 19]. Ms. Traxler asserts that "despite [Deputy Astorga's] conduct of DUI . . ., Defendants did not place him on any suspension, paid or unpaid," citing generally to her 74-page Exhibit O. *See* [*id.*].[18]

Ms. Traxler directs the Court to no evidence that the Sheriff's Office considered these violations to be comparably similar to Plaintiff's violations. *Robinson*, 645 F. App'x at 651. Indeed, the unrebutted evidence shows that these differing types of conduct are not subject to the same disciplinary practices. As previously explained, it is undisputed that the Sheriff's Office has

---

[17] The Court notes that the record suggests that Deputy Roll was placed on unpaid leave pending the investigation on the DUI charge, *see* [Doc. 64-12 at 12; Doc. 54-3 at ¶ 36], and Ms. Traxler provides no evidence that Deputy Roll was provided with backpay upon his return to work.

[18] The Court notes, however, that Deputy Astorga's disciplinary file does appear to reflect that he was suspended without pay for 40 hours. [Doc. 64-15 at 53].

a policy of placing individuals charged with non-traffic-related offenses on unpaid leave.  [Doc. 54-4 at ¶ 4]; Undisputed Material Fact No. 5.  In contrast, Lieutenant Anselmi stated in his declaration that the offenses of careless driving and DUI "do[] not implicate the Sheriff's unpaid leave practice."  [Doc. 54-3 at ¶ 36]; *see also* [*id.* at ¶ 10 ("Employees charged with traffic-related misdemeanors (reckless driving, DUI, speeding, etc.) are typically relieved of any duties that require driving and are transferred to other positions where driving is not a required part of the job, but are not placed on unpaid leave.")].  Plaintiff has not rebutted this evidence or presented any evidence creating a genuine dispute of fact as to the governing disciplinary practices of the charged offenses.  While Defendants do not explain why employees charged with driving offenses are not subject to the same automatic suspension practices as employees charged with other offenses, it is not this Court's role in determining whether a prima facie case of discrimination exists to second guess the Sheriff's Office employment practices, as an employer "must be allowed to exercise its judgment in determining how severely it will discipline an employee for different types of conduct."  *Kendrick*, 220 F.3d at 1233; *see also Sedgwick Cnty.*, 226 F. App'x at 795 (applying *Kendrick* to government employer).

Where differing employee infractions are governed by different disciplinary practices or standards, those differing infractions "do[] not provide a helpful comparison" for Title VII purposes.  *Rivera v. City & Cnty. of Denver*, 365 F.3d 912, 923 (10th Cir. 2004).  For example, in *Rivera*, the plaintiff was discharged for "falsely report[ing] doing work and then induc[ing] another employee to lie on his behalf."  *Id.* at 915.  He argued that his termination was discriminatory, pointing to less severe disciplinary actions of employees he believed were similarly situated to him—namely, employees who were disciplined "for abusing alcohol or drugs."  *Id.* at 923.  The Tenth Circuit declined to consider these purported comparators because "[t]he discipline of

individuals who abused alcohol or drugs was controlled by [an executive order] which set special standards (involving, among other things, rehabilitation and testing) for such infractions," such that "[d]iscipline under that executive order [did] not provide a helpful comparison to [the plaintiff's] case." *Id.*; *see also Hussey v. Griffin Wheel Co., Inc.*, No. 08-2008-JPO, 2009 WL 10706860, at *8 (D. Kan. Nov. 16, 2009) (declining to consider comparators who were disciplined under the employer's absenteeism standards, rather than the performance expectation standards used for the plaintiff's discipline); *McGowan*, 472 F.3d at 745 (employee who violated internal policy was not similarly situated to plaintiff who violated both state law and internal policy).

Simply put, the unrebutted evidence shows that Ms. Traxler's child abuse, domestic violence, harassment, assault, and false imprisonment charges rendered her subject to a different internal disciplinary practice than the driving offenses charged to Deputies Davis, Roll, and Astorga.  Ms. Traxler has not demonstrated via admissible evidence that, despite these differing standards, the Sheriff's Office nevertheless considered the other individuals' offenses to be comparably serious to her offenses. *Robinson*, 645 F. App'x at 651; *McGowan*, 472 F.3d at 745 (courts must consider workplace policies applicable to the plaintiff and intended comparators). Accordingly, she has not presented evidence from which a jury could conclude that she is similarly situated to these individuals based on their traffic-related offenses or charges.

### C.    Domestic Violence Charges

Two deputies—Deputy Mayfield and Deputy Morris—were charged, like Plaintiff, with domestic violence offenses.  And each of these individuals was, like Plaintiff, placed on unpaid administrative leave.  [Doc. 56-9 at 3 (Deputy Mayfield); Doc. 56-10 at 3 (Deputy Morris)].

Deputy Morris received backpay upon his return to work, *see* [Doc. 54-3 at ¶ 27], but Defendants state in their Motion that Deputy Mayfield did not receive backpay. *See* [Doc. 54 at 14].[19]

Defendants contend that these individuals are not similarly situated to Plaintiff because "in both cases, [their] charges were dismissed by the DA without a plea." [Doc. 54 at 14]. In addition, Defendants note that Deputy Morris "was exonerated of the UA charges against him (unlike Plaintiff) because the evidence clearly demonstrated that he did not act unlawfully; thus, he was treated differently than Plaintiff (received backpay) because of material differences in the circumstances of his case." [*Id.*].

In response, Ms. Traxler first states that Deputies Mayfield and Morris "engaged in conduct which is substantially similar in nature and severity" to her conduct. [Doc. 64 at 18]. However, Ms. Traxler fails to provide any citation to record evidence or any explanation as to how all three individuals' conduct was "substantially similar in nature and severity." *See* [*id.*].[20] Additionally, Ms. Traxler asserts that the fact that these deputies had their charges dismissed "is a distinction without a difference" because "[t]he ultimate outcome – no criminal charges – is the same, and is the critical factor." [*Id.*]. She also argues that any practice of distinguishing between charges ending in a guilty plea and voluntary dismissal was not "known to employees or published in

---

[19] Neither side has cited to evidence demonstrating that Deputy Mayfield did not receive backpay. However, the Court notes that Ms. Traxler does not argue in her Response that Deputy Mayfield received backpay and does not otherwise explain how Deputy Mayfield was treated more favorably than she was. *See generally* [Doc. 64]. Thus, the basis for Plaintiff's position that Deputy Mayfield was treated more favorably is unclear.

[20] At best, Plaintiff cites generally to her Exhibits M and N, which are 96 and 90 pages long, respectively. General citations to voluminous materials are "plainly insufficient to meet [the plaintiff's] burden of designating specific facts that show a genuine issue for trial." *Chawla v. Lockheed Martin Corp.*, 69 F. Supp. 3d 1107, 1129 (D. Colo. 2014); *see also Sewell v. Safeco Ins. Co. of Am.*, No. 06-cv-000150-EWN-MJW, 2007 WL 2071617, at *6 (D. Colo. July 19, 2007) (concluding that the defendant was entitled to summary judgment where the plaintiff provided only a general citation to record evidence and "neither specifie[d] nor point[ed] the court to the supposedly indicative evidence she breezily mention[ed]").

policy – in other words, the evidence indicates that these are post-hoc justifications, which are indicative of discriminative motive." [*Id.*]. Again, Ms. Traxler provides no citations to record evidence in support of her assertion that Defendants' distinction between dropped charges and an exoneration in an IA investigation, on one hand, and a guilty plea and sustained charges in an IA investigation, on the other, are "post-hoc" justifications for the difference in treatment. Nor does Ms. Traxler cite any legal authority in support of her argument. These assertions are thus insufficient to withstand summary judgment. *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1136 (10th Cir. 2003).

The Court concludes that Ms. Traxler has not made an adequate showing that "the incidents [s]he is using for comparison do not involve differentiating or mitigating circumstances that would distinguish them from [her] own conduct." *Ramirez*, 655 F. Supp. 2d at 1176. The Court agrees with Defendants that Deputy Morris's circumstances are distinct from Plaintiff's—namely, unlike Plaintiff, Deputy Morris was exonerated of the IA charges against him. [Doc. 54-3 at ¶ 27; Doc. 56-10 at 11, 15]. In other words, after an IA investigation, it was concluded that Deputy Morris did not violate a workplace policy. And Lieutenant Anselmi explained that "*because* [Deputy Morris] was exonerated, [he] was permitted to request and receive backpay for his period of unpaid leave." [Doc. 54-3 at ¶ 27 (emphasis added)]. As for Deputy Mayfield, the IA charges against him were deemed "resolved." [Doc. 56-9 at 7]. Ms. Traxler, on the other hand, was not exonerated—instead, three of the four IA charges against her were sustained and she was found to have violated three workplace policies: 310.A.3-Respect for Others; 310.A.1-Obedience to Laws, Directives, and Orders; and 310.A.6-Conduct Unbecoming of a Member. [Doc. 54-2 at 32; Doc. 54-9 at ¶ 12]. And it is undisputed that the Sheriff's Office has *never* provided backpay to an employee who was placed on unpaid leave due to criminal charges and where the employee's IA

charges were sustained.  Undisputed Material Fact No. 26; [Doc. 54-3 at ¶ 21; Doc. 54-4 at ¶ 21].

Ms. Traxler's argument that she was nevertheless similarly situated to Deputy Morris because "she

was cleared of all criminal charges, and . . . has no criminal record whatsoever" does not change

this conclusion.  And with respect to Deputy Mayfield, the Court also concludes that no reasonable

jury could find that he was a similarly situated male comparator who was treated more favorably

than Plaintiff because Ms. Traxler has made no argument (and produced no evidence) that he was

treated differently than she was.  *See* [Doc. 64].  Accordingly, neither Deputy Morris nor Deputy

Mayfield assist Plaintiff in meeting her prima facie burden.

### D.   Workplace Environment

Shifting her argument, Ms. Traxler next contends that "[o]ther cases, particularly when

combined and considered in their collective, point to a workplace which is favorable to men."

[Doc. 64 at 19].  She references two male employees—Deputy Mohammed Alocozy and Mr. Clint

Eggleston[21]—who were found or alleged to have "made inappropriate, sexual comments which

degraded women" and "engaged in inappropriate, sexually[ ]demeaning language towards

women" but who were not suspended.  [*Id.*].  Ms. Traxler maintains that "[t]his litany of male

deputies engaging in improper conduct towards women and conduct which is violative of

workplace policies, regardless of criminal implications, demonstrates workplace circumstances

which a reasonable person could make an inference of discrimination."  [*Id.*].[22]  Ms. Traxler does

---

[21] Ms. Traxler does not inform the Court of Mr. Eggleston's employment position with the Sheriff's Office.  A review of the evidence shows that, at least on April 3, 2018, Mr. Eggleston served as a maintenance foreman.  *See* [Doc. 64-17 at 5].

[22] It does not appear that Ms. Traxler attempts to argue that Deputy Alocozy and Mr. Eggleston are similarly situated to her or were treated more favorably than she.  *See* [Doc. 64 at 19]; *see also* [*id.* at 15 (Ms. Traxler listing Deputies Carter, Cohn, Davis, Mayfield, Morris, and Roll as similarly situated individuals)].  In any event, to the extent that she does attempt to make this argument, this argument fails for the reasons set forth above with respect to an apparent lack of criminal charges.  Furthermore, while Ms. Traxler has not provided any evidence of Mr. Eggleston's job duties as a

not cite any legal authority in support of her argument or point the Court to any authority in which a court concluded that derogatory comments about women made in the workplace, but which did not have an obvious relation to the underlying challenged conduct, are sufficient to create an inference of discrimination with respect to the challenged conduct. *Cf. Minshall v. McGraw Hill Broadcasting Co.*, 323 F.3d 1273, 1281 (10th Cir. 2003) (in termination context, noting that "[w]hile isolated comments, unrelated to the challenged action, are insufficient to show discriminatory animus in termination decisions, a plaintiff can show such animus *by demonstrating a nexus between the allegedly discriminatory statements and the defendant's decision to terminate the plaintiff*") (emphasis added); *see also Velasquez v. Philips Elecs. N. Am. Corp.*, No. 13-1463-DDC-KMH, 2015 WL 505628, at *11 (D. Kan. Feb. 6, 2015) ("[I]solated comments made by non-decisionmakers are not sufficient to establish an inference of discrimination.").  Furthermore, Ms. Traxler does not point to evidence that Sheriff Brown made such comments or that Sheriff Brown was involved in the disciplinary decisions of Mr. Eggleston or Deputy Alocozy.  Instead, it was Lieutenant Justin Osborn who signed the disciplinary memorandum imposing 20 hours of unpaid leave on Deputy Alocozy.  *See* [Doc. 64-16 at 95].  As for Mr. Eggleston, his disciplinary memorandum was issued by Lieutenant Stefanie Spain-Madrigal and was signed by Captain Laurie Halaba and Lieutenant Anselmi.  [Doc.64-17 at 30].  Thus, these comments do not support an inference that Sheriff Brown acted with a discriminatory animus in denying Plaintiff backpay. *See Kendrick*, 220 F.3d at 1233 ("Different supervisors will inevitably react differently to employee insubordination.").[23]  The Court is unpersuaded that a reasonable jury could conclude

---

maintenance foreman, he would presumably not be considered similarly situated to Ms. Traxler as a Sheriff's Deputy. *See Berhanu*, 2011 WL 782698, at *8.

[23] Furthermore, the Court notes that Deputy Alocozy's derogatory comments were reported to have been made on December 2, 2020—over one year after Sheriff Brown denied Ms. Traxler backpay, which provides an additional basis to conclude that this evidence is insufficient to suggest an

that there is an inference of a discriminatory animus based on the unrelated conduct and subsequent discipline of these individuals.

### E. Discovery

Finally, this Court addresses Plaintiff's suggestion that the Court's various rulings on discovery interfered with her ability to gather evidence or her available arguments on summary judgment. [Doc. 64 at 5–6]. As an initial matter, this Court notes that to the extent that Plaintiff disagreed with the discovery rulings of the Honorable Kristen L. Mix [Doc. 44; Doc. 53], she could have—but did not—file an objection to the presiding judge within fourteen days of being served with a copy of the Minutes reflecting Judge Mix's rulings. Fed. R. Civ. P. 72(a). Having not filed an objection, Plaintiff cannot now lodge an objection or assign error to Judge Mix's rulings. *Id.* ("A party may serve and file objections to the order within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to."); *Hildebrand v. Steck Mfg. Co., Inc.*, No. 02-WY-1125-AJ (OES), 2005 WL 8160065, at *4 (D. Colo. Oct. 5, 2005) (observing that "[a] district court may not reconsider the nondispositive decision of a United States Magistrate Judge to which a timely objection was not made. To do so would amount to legal error."). Second, this Court clarifies that it has undertaken its analysis of who is an appropriate comparator to Ms. Traxler, and whether she had sufficient evidence to carry her prima facie burden, without consideration of Judge Mix's rulings.

In sum, Ms. Traxler has not identified a genuine issue of material fact with respect to whether she was treated less favorably than similarly situated employees outside of her protected

---

inference of discrimination in Sheriff Brown's decision. *See* [Doc. 64-16 at 5]; *see also Didier v. Abbott Lab'ys*, 21 F. Supp. 3d 1152, 1167 (D. Kan. 2014) (conduct that occurred "as long as 18 months after [the] plaintiff's termination" was insufficient to establish nexus between the conduct and the plaintiff's termination), *aff'd*, 614 F. App'x 366 (10th Cir. 2015).

class.  Accordingly, she cannot succeed on her Title VII or CADA discrimination claims based on differential treatment.  The Motion for Summary Judgment is thus **GRANTED** with respect to Claims One and Two.

## II.    Disparate Impact

"Title VII forbids not only intentional discrimination based on disparate treatment but also 'practices that are fair in form, but discriminatory in operation,' most often referred to as 'disparate impact' discrimination." *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1220 (10th Cir. 2013) (quoting *Lewis v. City of Chicago*, 560 U.S. 205, 211 (2010)).  Similar to discrimination claims based on disparate treatment, disparate impact claims are analyzed under the *McDonnell Douglas* framework.  First, Ms. Traxler must establish a prima facie case of disparate impact discrimination; this requires a showing of (1) an employment practice that (2) causes a disparate impact on a protected group. *Id.*  If she meets this burden, the burden will shift to Defendants "to demonstrate that the challenged practice is job related for the position in question and consistent with business necessity."  42 U.S.C. § 2000e–2(k)(1)(A)(i).  If Defendants establish the requisite business necessity, Ms. Traxler must show that Defendants "refuse[d] to adopt an available alternative employment practice that has less disparate impact and serves the employer's legitimate needs."  *Ricci v. DeStefano*, 557 U.S. 557, 578 (2009).

Defendants contend that they are entitled to summary judgment on Plaintiff's disparate impact claim because (1) Ms. Traxler provides no evidence of any employment policy or practice purportedly causing a disparate impact and (2) Ms. Traxler provides no evidence of any disparate impact.  [Doc. 54 at 18–19].  Ms. Traxler responds that she has presented "substantial evidence" of disparate impact discrimination.  [Doc. 64 at 20].  She argues that "even if Sheriff Brown did not personally have [a] discriminatory animus, the practice he has implemented, which is not

written and is not promulgated to employees, is necessarily amorphous in its scope and application." [*Id.* at 21–22]. The exact parameters of what exactly Ms. Traxler believes this practice or policy to be are unclear. She states, in full:

> It is unclear when [Sheriff Brown's] practice went into effect. It is unclear whether it is applied consistently. It is unclear whether Sheriff Brown is creating exceptions or changing his practice as time passes, because it is not in writing. At first, the practice was that alleged criminal conduct would bring an automatic and immediate suspension to employees. For unknown reasons, Sheriff Brown does not similarly place employees accused of sexual harassment on similar suspension. At some later point, during litigation, the practice was amended to only be applied to employees accused of felonies and non-traffic misdemeanors. And in some circumstances, hardly clear enough to elucidate, some employees, in some cases, may be entitled to retroactive pay for suspensions. These rules have favored males and disfavored females in practice.

[*Id.* at 22]. Stated differently, Ms. Traxler insists that there is *some* employment practice that disfavors women, but this purported practice is undefinable, not written down, not explained or described to employees, went into effect at an unknown time, may or may not be applied consistently, and may be changing as time passes.

Respectfully, Plaintiff's argument is inadequate to preclude summary judgment on her disparate impact claim because she has failed to adduce sufficient evidence to demonstrate a genuine issue of material fact as to either prong of her prima facia case. First, despite Plaintiff's insistence that Sheriff Brown has some undefined, unclear, unofficial discriminatory disciplinary practice, Plaintiff's subjective hunch that such a practice exists is insufficient to preclude summary judgment. Instead, "[t]he first step in raising a disparate-impact claim is to identify the *specific employment practice* allegedly causing the discriminatory impact." *Tabor*, 703 F.3d at 1221 (emphasis added); *see also Murphy v. Derwinski*, 990 F.2d 540, 544 (10th Cir.1993) ("Under the disparate impact theory, a plaintiff must first make out a prima facie case of discrimination by showing that a *specific identifiable employment practice or policy* caused a significant disparate

impact on a protected group.") (emphasis added). Ms. Traxler has not done so. *Cf. Laber v. Austin*, No. 18-1351-JWB, 2022 WL 17361437, at *26 (D. Kan. Dec. 1, 2022) (in ADEA context, entering judgment in favor of the defendant where the plaintiff failed to identify a specific employment practice that had a discriminatory impact).

Second, Plaintiff's assertion that this undefined and ever-changing practice "ha[s] favored males and disfavored females in practice" is wholly unsupported by any citation to record evidence and lacks any supporting explanation or development. *See* [Doc. 64 at 22]. This assertion is insufficient to preclude summary judgment on Ms. Traxler's disparate impact claim. *Harvey Barnett*, 338 F.3d at 1136.

In sum, Ms. Traxler has not articulated any basis for her claim, let alone demonstrated a genuine issue of material fact precluding summary judgment on this claim. For this reason, the Motion for Summary Judgment is **GRANTED** with respect to Claim Four.

## III.   Plaintiff's Equal Protection Claim

The Fourteenth Amendment's Equal Protection Clause provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws," U.S. Const. amend. XIV, § 1, which "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To prevail on her equal protection claim, Ms. Traxler must first make a threshold showing that she was treated differently than similarly situated individuals. *Dalton v. Reynolds*, 2 F.4th 1300, 1308 (10th Cir. 2021). Then, she must "demonstrate that the state actor's differential treatment of her cannot pass the appropriate level of scrutiny." *Id.* "Gender-based classifications . . . are evaluated under the intermediate scrutiny rubric, which provides that the [challenged action] must be substantially related to an

important government objective." *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1519 (10th Cir. 1994).

With respect to Claim Three, which is asserted against Sheriff Brown in his individual and official capacities, Defendants first contend that Ms. Traxler's equal protection claim fails because she cannot demonstrate that she was discriminated against on the basis of sex. [Doc. 54 at 19]. In the alternative, they contend that insofar as the claim is brought against Sheriff Brown in his individual capacity, he is entitled to qualified immunity. [*Id.* at 20]. Ms. Traxler cursorily responds to the qualified immunity argument, maintaining that "it has been established since 1989 in [the Tenth Circuit] that prohibitions of sex based harassment and discrimination are clearly established." [Doc. 64 at 22]. However, Ms. Traxler offers no responds in support of the merits of her claim. *See* [id.].

The Court agrees with Defendants that summary judgment in favor of Sheriff Brown is warranted on Plaintiff's equal protection claim. As explained above, Ms. Traxler has not established a genuine dispute of fact that she was treated any differently than similarly situated individuals on the basis of sex. This lack of evidence on an essential element is fatal to her claim. *Dalton*, 2 F.4th at 1308. The Motion for Summary Judgment is thus **GRANTED** with respect to Claim Three. Having resolved each of Plaintiff's claims, the Court need not, and does not, address any remaining arguments.

## CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1)     Defendants' Motion for Summary Judgment [Doc. 54] is **GRANTED**;

(2)     Defendants' Opposed Motion for Leave to File Trial Brief [Doc. 82] is **DENIED as moot**;

(3)    Defendants' Unopposed Motion to File Documents Under Level 1 Restriction and Restrict Public Access [Doc. 83] is **GRANTED** and Defendants' Omnibus Motion in Limine [Doc. 84] will remain under Level 1 Restriction;

(4)    Defendants' Omnibus Motion in Limine [Doc. 84] is **DENIED as moot**;

(5)    The Clerk of Court shall **ENTER** judgment in favor of Defendants and against Plaintiff on each of Plaintiff's claims;

(6)    Defendants are **AWARDED** their costs pursuant to Rule 54 of the Federal Rules of Civil Procedure and Local Rule 54.1;

(7)    The trial set to begin on June 12, 2023 and all related deadlines are **VACATED**; and

(8)    The Clerk of Court is **DIRECTED** to terminate this case.


DATED:  April 26, 2023                          BY THE COURT:

                                                _____
                                                Nina Y. Wang
                                                United States District Judge